AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Middle District of Alabama

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  2:20mj187-SMD
The Cellular Telephone Assigned Call Number )
(334) 434-2805 and IMSI Number 310410267632345 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the     Southern     District of     Florida    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 841 | Possession with intent to distribute a controlled substance |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.
☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Cory Kroeger, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   08/07/2020

*Judge's signature*

City and state:  Montgomery, Alabama         Stephen Michael Doyle, Chief U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED WITH CALL NO. (334) 434-2805 AND/OR OTHER UNIQUE IDENTIFIER, SUCH AS INTERNATIONAL MOBILE SUBSCRIBER IDENTITY NO. 310410267632345 THAT IS IN THE CUSTODY OR CONTROL OF AT&T WIRELESS | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Cory Kroeger, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (334) 434-2805 with IMEI No. 310410267632345, with listed subscriber(s) John Cowart ("the Subject Account") whose service provider is AT&T Wireless, a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida. The Subject Account is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121–3127. The

requested warrant, therefore, includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.  I am a Special Agent with the Drug Enforcement Administration, and have been since June 10, 2018. I am currently assigned to the Montgomery Resident Office, HIDTA Task Force Group. Prior to becoming a Special Agent, I was employed by the Franklin, Tennessee Police Department for approximately ten and one half years. I have worked exclusively on narcotics investigations for approximately six years.

4.  As a DEA Special Agent, I am responsible for investigating crimes that involve the unlawful importation and exportation of illegal narcotics, the possession with intent to distribute controlled substances, the distribution of controlled substances, the use of communication facilities to further these offenses, and the related crime of laundering monetary instruments, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and 952; and Title 18, United States Code, Sections 1956 and 1957. I have participated in long-term, historical investigations of drug distribution organizations. In conducting these investigations, I have used a variety of investigative techniques and resources, which include, but are not limited to, conducting physical and electronic surveillance, monitoring court-authorized wiretaps, and managing the use of confidential sources ("CS" or "informants"). Through these investigations, my training and experience, in conjunction with conversations with other Agents, as well as other law enforcement personnel, I have become familiar with the methods used by narcotics traffickers, including, but not limited to, the methods of importing, packaging, transferring and distributing narcotics, the use of cellular telephones, the use of numerical codes, text messages, code words, the use of email, social media, other internet means in which communication can be established and other methods of avoiding detection by law enforcement, as well as the types and amounts of profits made by

drug traffickers and the methods, language and terms that are used to disguise the source and nature of the profits from their illegal narcotics dealing. I have also been involved in the debriefing of defendants, co-conspirators, witnesses and informants who have been involved with the distribution and transportation of controlled substances and of the laundering and concealing of proceeds derived from drug dealing.

5. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and/or information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1) have been committed, are being committed, and will be committed by John Cowart, and other known and unknown persons. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

7. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

8. The United States, including the DEA, is conducting a criminal investigation of John Cowart, Robert Willis, and other unidentified subjects regarding possible violations of Title 21, United States Code, Section 841(a)(1).

9.      On April 9, 2020, at approximately 8:00 a.m., a routine inspection was conducted by FedEx employees along with Montgomery Police Department (MPD), Special Operations Divisions (SOD), Narcotic officers, at a FedEx warehouse located at 2770 Gunter Park Drive East, Montgomery, Alabama. During the course of the inspection, a MPD K-9 alerted to a package located inside the FedEx facility. Subsequent to the K-9 alert, the package was removed and inspected by FedEx employees, along with MPD Narcotic officer Detective (Det.) Hubbard and MPD Officer Jacob Boddie. At the conclusion of the inspection, approximately ten and one half (10 ½) pounds of suspected crystal methamphetamine was located by FedEx employees, at which time the methamphetamine was turned over to and seized by Det. Hubbard and Officer Boddie. DEA Special Agent (SA) Torey Loftin and Task Force Officer (TFO) Brian Fullard were notified about the parcel. Both SA Loftin and TFO Fullard responded to the MPD Special Operations Division (SOD) and took custody of the parcel. After taking custody of the package from MPD SOD, SA Loftin and TFO Fullard observed the package was sent from 7349 Milliken Avenue, #140, Rancho Cucamonga, California 91730, on April 8, 2020. Agents further observed that the package was addressed to a Shawna CHRISITIAN of 636 E. Madison Street, Troy, AL 36081. Agents conducted a law enforcement database search and were unable to locate a Shawna CHRISITIAN residing at 636 E. Madison Street, Troy, Alabama. Based on my training, knowledge, and experience, I know that it is common practice for drug traffickers to use fictitious recipient names on parcels shipped in the mail, containing drugs, in order to avoid detection by law enforcement.

10.     Furthermore, I and other DEA Montgomery agents had knowledge that John Cowart was the known subscriber to the Subject Account and to telephone number (334) 220-9625, both with a listed subscriber address of 636 E. Madison Street, Troy, Alabama. Cowart has

4

an extensive criminal history, which includes being sentenced to three hundred sixty (360) month's federal incarceration on July 7, 1993, to include sixty (60) months of supervised release, for conspiracy to possess with intent to distribute crack cocaine, possession with intent to distribute crack cocaine, and felon in possession of a firearm.

11. On April 9, 2020, TFO Chase Avant and Troy Police Department (TPD) Officer Eric Ernsberger were conducting surveillance at 636 E. Madison Street, Troy, Alabama, and observed a black male matching the physical description of Cowart walking from the backyard to the front yard area of the residence, leading agents to believe Cowart was the intended recipient of the intercepted FedEx parcel containing approximately ten and one half (10 ½) pounds of methamphetamine.

12. On April 23, 2020, TFO Patricia Hill contacted federal probation officer (PO) Seth Spooner in reference to John Cowart. PO Spooner stated that Cowart is currently on federal probation and has a registered address of 636 Madison Avenue, Troy, Alabama. PO Spooner further stated that Cowart provided the Subject Account as his cellular telephone number.

13. On June 23, 2020, at approximately 10:50 a.m., CST, TFO Patricia Hill and I met with a Confidential Source ("CS"), in reference to the drug-trafficking activities of Robert Willis, a/k/a "Money Bunny." During this meeting, the CS advised that Willis was involved with the distribution of drugs, but was utilizing other individuals to transport the drugs on Willis' behalf. The CS identified a black male known to the CS as "Ricky" who was believed to be distributing drugs for Willis. The CS further stated he/she had knowledge that "Ricky" had recently been released from federal prison after serving twenty five (25) years for drug charges.

14. On June 25, 2020, the CS placed a recorded call to Willis, in my presence, in an attempt to make a controlled purchase of cocaine. During the recorded call, Willis told the CS that

he, Willis, would be sending "Rick" or another unidentified individual to deliver the cocaine to the CS once it had arrived.

15. After the recorded telephone call with Willis was finished, the CS advised me that the individual referred to by Willis as "Rick" was John Ricky Cowart. The CS provided me a Facebook profile picture of Cowart. I immediately recognized Cowart and had knowledge through prior investigation that Cowart was the user of the Subject Account and telephone number (334) 220-9625.

16. Based on the aforementioned, I believe John Cowart is currently utilizing a device associated with call number (334) 434-2805, the Subject Account, to distribute drugs within the Middle District of Alabama. Information obtained from this order will help agents identify locations frequented and used by Cowart to further commit violations of Title 21.

17. In my training and experience, I have learned that AT&T is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

18.     In my training and experience, I have learned that AT&T Wireless can collect cell-site data on a prospective basis about the Subject Account. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

19.     Based on my training and experience, I know that AT&T Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call

made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

20.     Based on my training and experience, I know AT&T Wireless can collect E-911 Phase II data about the location of the Subject Account, including by initiating a signal to determine the location of the Subject Account on AT&T Wireless' network or with such other reference points as may be reasonably available.

21.     Based on my training and experience, I know that AT&T Wireless' can collect cell-site data about the Subject Account. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

22.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

23.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target

Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24. I further request that the Court direct AT&T Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T Wireless. I also request that the Court direct AT&T Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T Wireless' services, including by initiating a signal to determine the location of the Subject Account on AT&T Wireless' network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

25.  I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Subject Account outside of daytime hours.

Respectfully submitted,

**Subscribed electronically and sworn to telephonically on August 7, 2020.**
Cory Kroeger
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on
this 7th day of August, 2020.

/s/ Stephen M. Doyle
STEPHEN MICHAEL DOYLE
CHIEF UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

The cellular telephone assigned call number (334) 434-2805 with IMEI No. 310410267632345, with listed subscriber John Cowart ("the Subject Account") whose service provider is AT&T Wireless, a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, North Palm Beach, Florida.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be Disclosed by the Provider**

All information about the location of the Subject Account described in Attachment A for a period of thirty (30) days, during all times of day and night. "Information about the location of the Subject Account" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T Wireless, AT&T Wireless is required to disclose the Location Information to the government. In addition, AT&T Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T Wireless' services, including by initiating a signal to determine the location of the Subject Account on AT&T Wireless' network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T Wireless' for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II.     Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 21 involving John Cowart and/or unidentified subject(s).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.